# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

**CRIMINAL ACTION NO. 5:24-CR-118-GFVT-EBA**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**V.**                                    **PLEA AGREEMENT**

**KEENAN J. MCLAUGHLIN,**                                    **DEFENDANT**
    **aka CHIEF**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 3 of the Superseding Indictment, charging a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 50 grams or more of actual methamphetamine, 100 grams or more of a mixture containing fluorofentanyl, and 40 grams or more of a mixture containing fentanyl; and 18 U.S.C. § 924(c)(1)(A), possession of firearms in furtherance of drug trafficking. The Defendant also admits the Forfeiture Allegations of the Indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the original Indictment and Count 2 of the Superseding Indictment.

2. The essential elements of Count 1 are:

    (a) First, the Defendant knowingly possessed 50 grams or more of actual methamphetamine, 100 grams or more of a mixture containing fluorofentanyl, and 40 grams or more of a mixture containing fentanyl.

    (b) Second, the Defendant intended to distribute the methamphetamine,

1

fluorofentanyl, and fentanyl.

3. The essential elements of Count 3 are:

    (a) First, the Defendant committed the crime charged in Count 1, which is a drug trafficking crime that may be prosecuted in a court of the United States.

    (b) Second, the Defendant knowingly possessed a firearm.

    (c) Third, the possession of the firearm was in furtherance of the crime charged in Count 1.

4. As to Counts 1 and 3, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts are true:

    (a) Between approximately July and October 2024, the Lexington Police Department investigated the Defendant's narcotics trafficking. On October 24, 2024, law enforcement executed a search warrant at the Defendant's residence and located several pounds of methamphetamine, numerous grams of fluorofentanyl and fentanyl, numerous firearms, paraphernalia indicative of distribution, and large amounts of U.S. currency. The Defendant was simultaneously subject to a traffic stop, and he had additional methamphetamine in the vehicle with him. Specifically, just before noon on October 24, 2024, the Defendant left his residence in a black Malibu. He drove to a Dollar General and parked next to a silver Chevrolet. He then entered the silver vehicle and engaged in a drug transaction. He had approximately 60 grams of fentanyl and over $8,000 in cash in the pocket of his hoodie. Officers also searched the Defendant's black Malibu and found methamphetamine in the pocket of the passenger seat. On October 24, 2024, approximately $3,000 in cash was seized from a vehicle occupied by the Defendant, and approximately $8,170 in cash was seized from the Defendant.

    (b) The search of the Defendant's residence occurred simultaneously. Officers located ten firearms in the master bedroom, four of which were reported stolen. All the Defendant's handguns were located in the drawer under the Defendant's side of the bed. A shotgun and AR-style rifle were located behind the bedroom door. Also located in the bedroom with the firearms was a large quantity of methamphetamine (approximately 10-11 pounds) and 278 grams of suspected fentanyl, as well as approximately $44,680 in cash. Approximately 1 pound 4 ounces of methamphetamine, 122 grams of suspected fentanyl, and various drug paraphernalia were found in the kitchen. After the Dollar General encounter,

2

McLaughlin was brought back to his residence, and he stated that his girlfriend had no involvement and that nothing in the residence belonged to her. Both the Dollar General and the Defendant's residence are located in Fayette County, in the Eastern District of Kentucky. All relevant conduct occurred in Fayette County, in the Eastern District of Kentucky.

(c)  Suspected controlled substances seized during this investigation were lab tested and determined to, in fact, be methamphetamine, fluorofentanyl, and fentanyl. In total, the offense involves approximately 4,662.9 grams of methamphetamine (including approximately 2,990.76 grams of pure methamphetamine), a Schedule II controlled substance, 195.2 grams of fluorofentanyl, a Schedule I controlled substance, and 155.952 grams of fentanyl, a Schedule II controlled substance. The Defendant admits that he knowingly possessed and intended to distribute the controlled substances seized during this investigation, including over 50 grams of actual methamphetamine, over 100 grams of a mixture containing fluorofentanyl, and over 40 grams of a mixture containing fentanyl. The Defendant further admits that he possessed the firearms located in his bedroom, including (1) a Cobra Enterprises 380 caliber pistol, model CA380, serial number CP089193; (2) a Canik 9mm pistol, model TTI Combat, serial number 24CZ14087; (3) a Glock 45 caliber pistol, model 36, serial number MTR939; (4) a Walther 45 caliber pistol, model PPQ, serial number FDB1688; (5) a Taurus caliber 410/44 revolver, model: The Judge, serial number K0193997; (6) an FN 9 caliber pistol, model 509, serial number GKS0042080; (7) a DPMS Inc. multi caliber rifle, model A-15, serial number FFH068555; (8) a Panzer Arms 12-gauge shotgun, model BP-12, serial number G2-21-05618; and (9) assorted ammunition. The ATF analyzed these firearms and confirmed that they traveled in interstate commerce prior to being located in the Defendant's bedroom. As admitted above, the Defendant committed the crime charged in Count 1, which is a drug trafficking crime that may be prosecuted in a court of the United States. The Defendant possessed these firearms in furtherance of his drug trafficking. The firearms, several of which were loaded, saturated his bedroom. The firearms were strategically located so that they were quickly and easily available for use, and they were in close proximity to controlled substances.

5.  The statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than life, a fine of not more than $10,000,000, and a term of supervised release of not less than 5 years. The statutory punishment for Count 3 is imprisonment for not less than 5 years and not more than life, consecutive to any other sentence; a fine of not more than $250,000; and a term of supervised release of not more than 5 years. A mandatory special assessment of $100 per count applies, for a total of $200, which the

3

Defendant will pay to the U.S. District Court Clerk at the time of the entry of the plea.

6.    Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations.  These recommendations do not bind the Court.

(a)    United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

(b)  Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all conduct described in ¶ 4 and the provided discovery materials.

(c)    Pursuant to U.S.S.G. §§ 2D1.1(a)(5) & (c)(2), the base offense level for Count 1 is 36 because the offense involves approximately 65,501.36 KG of converted drug weight.

(d)    The United States anticipates seeking a 2-level enhancement for Count 1 under U.S.S.G. § 2D1.1(b)(12).  The Defendant reserves the right to object to this enhancement.

(e)    Pursuant to U.S.S.G. § 2K2.4(b), for Count 3, "the guideline sentence is the minimum term of imprisonment required by statute," 60 months consecutive to any other sentence imposed.

(f)  Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

7.  No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8.  The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

4

9. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial

5

on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. This specifically includes the privately-made firearm seized from the Defendant's bedroom. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant

agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees

7

that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and his attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 4/4/25                    By: _____
                                    James T. Chapman
                                    Assistant United States Attorney


Date: 4/4/25                    _____
                                    Keenan J. McLaughlin
                                    Defendant


Date: 4-4-25                    _____
                                    Pamela D. Perlman
                                    Attorney for Defendant

9